ROBERT L. BLAND, Judge.
By agreement in writing bearing date on the third day of March 1934, the Chesapeake and Ohio Railway Company leased to William Braid, the claimant, a parcel of land at St. Albans, in Kanawha county, West Virginia, containing 53.74 acres, more or less, to be used as a golf course. Said lease was from year to year, with a clause therein providing that either party thereto should have the right to terminate the same at any time before the date fixed therein for the termination of said lease upon giving to the other party ninety days written notice of the intention so to do.
A Mr. Braid took possession of the property immediately after the execution of the lease. A part of the leased property was converted into a golf course containing nine holes. In order *24 to make the property suitable for the course it was necessary to do a great deal of work in grubbing and clearing the land which had grown up in brush and trees. To do this work and properly equip the course for use necessitated the expenditure of about five thousand dollars. Claimant built a club house on the land, equipped with hot and cold water and showers, costing about a thousand dollars. He also constructed a garage and made other substantial improvements from year to year thereon. From the year 1934 to June 1942, Mr. Braid maintained said leased property as a golf course and built up a lucrative business in the operation of said land as such course.
On the 26th of May 1942, claimant’s lessor, the Chesapeake and Ohio Railway Company, notified him that it desired to terminate said lease agreement of March 3, 1934, ninety days days from June 1,1942, or as of August 31, 1942, in accordance with the paragraph four thereof. He was further advised that such action was taken as a portion of the property was required by the state.
It thus appears that claimant was entitled to the possession and use of the leased property until and including the 31st day of August 1942. However, according to the testimony of Mr. Braid upon the hearing of his claim, the state road commission made an entry upon the property as early as August 1941. It did certain surveying on the land and placed stakes on the golf course. When interrogated as to when such stakes were placed on the course Mr. Braid testified: “Well, I think the first of them was placed about a year ago. They came down there surveying the first of August and then they kept up nearly all winter.” There is no contradiction of this statement found in the record. It appears that about five of the nine holes of the course were affected by these stakes, and it was impossible for claimant to mow the grass on account of the stakes. In July 1942, the road commission moved thousands of yards of dirt with a steam shovel in the neighborhood of hole No. 4 for the purpose of building a road through the land. This dirt was removed from that portion of the land used by claimant as a golf course. Hole no. 4 was entirely *25 destroyed. In addition to digging dir.t at hole no. 4 and driving stakes down through five holes of the course, practically all of the sod on hole no. 7 was cut away. This, according to claimant, was done about June 1942. The removal of sod from the course was continued untill August 1942. It appears from the evidence that the road commission removed as much as fifteen thousand feet of sod from the course. The sod was removed from the golf course at different times and some of it was taken to the state police barracks.
Claimant contends that by reason of the entry of the road commission upon the premises and the work done by it thereon he has been damaged at the very least in the sum of $3500.00, and asserts his claim for that amount. It is shown that his gross income for the year 1940 was $1969.65. For the year 1941 his gross income amounted to $2,178.60. For the year 1942 his gross income was only $83.40. For the year 1940 claimant’s approximate profit from the operation of the golf course was $1200.00; for the year 1941, $1500.00, and for the year 1942 he lost $250.00.
Respondent resists the allowance of an award in favor of claimant and moves the dismissal of his claim. It argues that clalimant’s petition alleges the taking of private property for public use without just compensation being paid therefor, and, therefore, the court of claims does not have jurisdiction in the premises. It directs attention to article 5 of the Constitution of the United States and article 3, section 9, of the Constitution of West Virginia, providing that private property shall not be taken or damaged for public use without just compensation. It relies upon Hardy v. Simpson, 116 W. Va. 440, and Riggs v. State Road Commissioner, 120 W. Va. 298, and maintains that the claim in question is controlled by said cases.
If it could be shown that claimant would have a remedy in a court of law for redress for the damages which the record shows that he has sustained, the court of claims would not '''have jurisdiction of the claim, since subsection 7, section 14, chapter 20, acts of the Legislature of 1941, excludes from *26 the jurisdiction of the court any proceeding that may be maintained on behalf of the claimant in the courts of the state. We do not think, however, that the claim asserted is controlled by the cases cited by respondent. Neither do we think that claimant has a remedy in the courts of the state. Respondent’s entry upon the golf course was made during the time that claimant was entitled to the possession of the property. It is true that claimant’s lease was to terminate and end August 31, 1942, but until that time claimant was entitled to the possession and use of the leased premises. Claimant’s lease was personalty, not realty. It was not subject to condemnation. It was the entry of the road commission on the course premises and work done therein to the detriment of claimant before his right to the possession of the land ended that gave him the right to maintain his claim in this court, since he had no other remedy to pursue. It is reasonably clear from the evidence that claimant was deprived of profits that he might and would have earned from the unmolested operation of his golf course for the months of April, May, June, July and August in the year 1942. Considering the gross receipts yielded by the golf course for the years 1941 and 1942 and deducting the expenses incurred in those years, claimant would in all probability have earned a net profit of $100.00 per month during said five months had it not been for the change done to the course by the road commission. We think the record sustains this assumption. Of course an award should not be made on the basis of speculative profits, but in the instant case there is enough evidence in the record to warrant the finding that claimant’s business would have yielded him a net profit of $100.00 per month from April to September.
The motion to dismiss the claim must be overruled.
Under all the facts and circumstances disclosed by the record we feel that the claimant has established his right to an award of five hundred dollars ($500.00), and an order will be entered accordingly.